Matter of Astarita (2019 NY Slip Op 08666)





Matter of Astarita


2019 NY Slip Op 08666


Decided on December 4, 2019


Appellate Division, Second Department


Per Curiam.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on December 4, 2019
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

ALAN D. SCHEINKMAN, P.J.
WILLIAM F. MASTRO
REINALDO E. RIVERA
MARK C. DILLON
JOSEPH J. MALTESE, JJ.


2017-12971

[*1]In the Matter of Colin P. Astarita, admitted as Colin Patrick Astarita, an attorney and counselor-at-law. Grievance Committee for the Tenth Judicial District, petitioner; Colin P. Astarita, respondent. (Attorney Registration No. 2915957)



DISCIPLINARY PROCEEDING instituted by the Grievance Committee for the Tenth Judicial District. By decision and order on motion of this Court dated April 24, 2018, the Grievance Committee, inter alia, was authorized to institute and prosecute a disciplinary proceeding against the respondent. The Grievance Committee served and filed a notice of petition dated May 16, 2018, and a verified petition dated May 15, 2018, and the respondent served and filed a verified answer dated June 13, 2018. Subsequently, the Grievance Committee served and filed a statement of disputed and undisputed facts dated July 5, 2018, and the respondent filed a response to the Grievance Committee's statement of disputed and undisputed facts dated July 9, 2018. By decision and order on application of this Court dated August 15, 2018, the issues raised were referred to the Honorable Arthur J. Cooperman, as Special Referee, to hear and report. The respondent was admitted to the Bar at a term of the Appellate Division of the Supreme Court in the Second Judicial Department on September 16, 1998, under the name Colin Patrick Astarita.



Catherine A. Sheridan, Hauppauge, NY (Michael Fuchs of counsel), for petitioner.
Long Tuminello, LLP, Bay Shore, NY (Michelle Aulivola of counsel), for respondent.



PER CURIAM.


OPINION & ORDER
The Grievance Committee for the Tenth Judicial District served the respondent with a verified petition dated May 15, 2018, containing two charges of professional misconduct. The respondent filed a verified answer dated June 13, 2018, in which he admitted the factual specifications supporting the charges and asserted 10 defenses in mitigation. After a preliminary conference held on October 12, 2018, and a hearing conducted on November 29, 2018, the Special Referee filed a report dated February 26, 2019, in which he sustained both charges. The Grievance Committee now moves to confirm the Special Referee's report and to impose such discipline as the Court deems just and proper. The respondent's counsel submitted an affirmation in response, in which she requests this Court to impose an admonition or at most a public censure, in view of the evidence presented in mitigation.
The Petition
Charge one alleges that the respondent misappropriated funds entrusted to him as a fiduciary, in violation of rule 1.15(a) of the Rules of Professional Conduct (22 NYCRR 1200.0), as hereinafter specified:
At all times hereinafter mentioned, the respondent maintained an attorney trust account at Bridgehampton National Bank, entitled "C Astarita & Associates PC Attorney Escrow Account IOLA," account number ending 3165 (hereinafter the trust account). The respondent [*2]utilized the trust account incident to his practice of law and deposited client funds therein.
In or about October 2016, the respondent represented Kym Blanchard, the seller of real property in Southampton. The purchasers of the property were John McMahon and Lisa McMahon (hereinafter together the McMahons).
At the closing on October 6, 2016, the parties entered into a written escrow agreement, which provided, in relevant part, as follows:
"1. The sum of $10,000.00 shall be withheld from the closing proceeds to be held in escrow in Seller's attorney's/Escrowee's escrow account pending the confirmation by Purchaser, once the electrical service is turned back on, that the electrical system and all appliances and mechanical systems are in working order, as required by the Contract.
. . .
"3. Escrowee shall hold the funds in escrow according to the terms hereof and according to the same terms set forth in paragraph 6 of the Contract."
After the parties resolved the issues relating to the escrow agreement, the respondent issued the following two checks from the trust account. Check number 1214, dated October 20, 2016, was payable to Blanchard in the sum of $9,750 and was presented for payment and paid on October 21, 2016. This check represented the funds due Blanchard pursuant to the escrow agreement. Check number 1215, dated October 20, 2016, was payable to the McMahons in the sum of $250 and was presented for payment and paid on December 7, 2016. This check represented the funds due the purchasers pursuant to the escrow agreement.
Between October 6, 2016, the date of the escrow agreement, and December 7, 2016, the date trust account check number 1215 was paid, the respondent was required to maintain and preserve, at a minimum, $250 in the trust account. However, on November 28, 2016, the balance in the trust account was $0.
Charge two alleges that the respondent made cash withdrawals from his trust account, in violation of rule 1.15(e) of the Rules of Professional Conduct (22 NYCRR 1200.0), as follows:
In or about November 2016, the respondent represented Kaitlin Wilson in a personal injury matter. Prior to commencing an action, the parties agreed to a settlement for Wilson in the sum of $50,000. On November 7, 2016, the respondent deposited a settlement check in the sum of $50,000 for Wilson into the trust account. The respondent made 13 cash withdrawals from the trust account, totaling $50,250, in connection with the Wilson matter, as follows:
DATEAMOUNT
11/07/16$ 7,500 (the respondent's fee)
11/07/16$ 7,500 (the respondent's fee)
11/09/16$ 2,500
11/10/16$ 3,000
11/10/16 $ 8,000
11/14/16$ 1,500
11/14/16$ 3,000
11/14/16$ 7,250
11/16/16$ 3,000
11/21/16$ 3,000
11/25/16$ 1,500
11/28/16$ 1,000
11/28/16$ 1,500
Hearing Evidence
The respondent testified at the hearing concerning the two client transactions underlying the charges. The respondent's firm represented his friend Blanchard in the sale of property to the McMahons. After the closing, the respondent continued to hold $10,000 in the trust account pursuant to the escrow agreement. At this time, the respondent was the sole signatory on the trust account. In or about October 2016, the respondent disbursed the Blanchard/McMahon escrow funds by issuing trust account check number 1215 to the McMahons in the sum of $250 and [*3]trust account check number 1214 to Blanchard in the sum of $9,750. The check issued to Blanchard cleared the trust account on October 21, 2016; however, the check issued to the McMahons was not presented until December 7, 2016. At that time, there was a zero balance in the trust account. The respondent explained that the trust account deficiency occurred as a result of an overpayment to Wilson of the settlement funds from her personal injury matter. On November 7, 2016, the respondent deposited the $50,000 settlement check for the Wilson matter into the trust account. That same day, November 7, 2016, the respondent made two cash withdrawals, each in the sum of $7,500, representing his fee in the Wilson matter. Although the respondent testified that he wanted to provide Wilson with her settlement funds with a single check, he believed she would be unable to deposit the check in a bank. He further testified that Wilson requested to be paid her settlement funds in cash, and he did so over the course of approximately three weeks. On each occasion, the respondent met Wilson at his bank, sometimes twice in the same day, and paid her part of the settlement proceeds in cash. At the last meeting with Wilson on November 28, 2016, the respondent "emptied the account, whatever was left in the account." In doing so, the respondent overpaid $250 to Wilson and misappropriated funds being held for the Blanchard/McMahon transaction. The respondent discovered his error after he was alerted by his bank that there were no funds in the trust account when the McMahon check was presented. The respondent immediately deposited $250 in cash into the trust account to cover the McMahon check.
Findings and Conclusion
The respondent's counsel requests this Court to impose an admonition or at most a public censure, in view of the evidence presented in mitigation, including the unintentional nature of the misappropriation; the absence of harm to any client; the respondent's timely good-faith effort to rectify the consequences of his misconduct; the remedial measures instituted; his full and free disclosure to the Grievance Committee and cooperative attitude toward these proceedings; the character evidence demonstrating that the respondent is held in high regard by his clients, friends, members of the clergy, other attorneys, and the judges before whom he regularly appears; and his pro bono efforts, various community activities, and charitable efforts.
Notwithstanding the mitigation advanced, we note that not only did the respondent make cash withdrawals from the trust account to pay Wilson her settlement proceeds, but also withdrew cash to pay his fee, in violation of rule 1.15(e) of the Rules of Professional Conduct. Although the respondent claims that he was unaware that such conduct was unethical, it is noted that he was previously issued a Letter of Caution, among other things, to ensure that any and all disbursements from his trust account are made to an identified payee. In any event, the respondent is "held to the knowledge of the rules governing attorney escrow accounts" (Matter of Koston Hui Feng, 78 AD3d 123, 127). Additionally, when the respondent issued a final payment to his client Wilson, he failed to verify the amount that he had previously paid to her or that the remaining funds in the trust account were, in fact, Wilson's funds. Consequently, the respondent misappropriated funds being held for the Blanchard/McMahon transaction, in violation of rule 1.15(a) of the Rules of Professional Conduct.
Under the totality of the circumstances, we find that a public censure is warranted (see Matter of Popper, 274 AD2d 28).
SCHEINKMAN, P.J., MASTRO, RIVERA, DILLON and MALTESE, JJ., concur.
ORDERED that the petitioner's motion to confirm the report of the Special Referee is granted; and it is further,
ORDERED that the respondent, Colin P. Astarita, admitted as Colin Patrick Astarita, is publicly censured for his professional misconduct.
SCHEINKMAN, P.J., MASTRO, RIVERA, DILLON and MALTESE, JJ., concur.
ENTER:
Aprilanne Agostino
Clerk of the Court